Randall and Randall v. Lang.

---

## RANDALL AND RANDALL vs. LANG.

1. A voluntary deed or relinquishment from father to son is good, as against the grantor's subsequent creditors, when no actual fraud is shown.
2. The title to personal property descends to the personal representative, and the parties beneficially interested take as distributees under the statute.

APPEAL from the City Court of Mobile.

Tried before the Hon. ALEX. McKINSTRY.

GEO. N. STEWART, for appellants.

C. W. RAPIER, contra.

CHILTON, C. J.—This was a trial of the right of property, commenced before a justice of the peace, wherein John Lang, who had obtained an execution against Wm. D. Randall and his wife, Elmira, sought to condemn a negro boy slave,

named George, to its satisfaction. The said slave was claimed as the property of William and James Randall, children of said defendants. The trial before the justice resulted in favor of the claimants, and Lang appealed to the City Court, where the slave was condemned, and from this judgment the claimants appealed to this court.

The material facts, as they appear by a bill of exceptions which has been ordered to be made a part of the record in this cause, are as follows : The plaintiff in the execution proved that the slave levied on was seven or eight years old; that he was the son of a negro woman named Jinsey, and was born and raised in the family of the said William D. Randall; that said George and his mother, Jinsey, were both in the possession of said Randall and wife when he was levied on ; he also proved his value, and rested his cause.

The claimants proved that they were the children of Elmira Randall, who was the daughter of Jesse Jayne, and is now the wife of Wm. D. Randall ; that previous to her marriage with said Randall, in the year, 1832, she owned the girl Jinsey, having obtained her from one Brewster S. Jayne ; that her father had called upon Thos. G. Newbold, to receive a title for said negro girl, and to keep her for the benefit of the children of said Elmira, and to secure the said slave to such children; Newbold consented, and thereupon Elmira Jayne executed to him, of date 10th May, 1832, a bill of sale for said girl, reciting a consideration of three hundred dollars ; but it was designed, as Newbold proved, merely as a trust for the benefit of such children as the said Elmira might have. The loss of this instrument was shown, and its contents were proved. The girl was present when this contract was made, but went back into the possession of Elmira, who subsequently married Wm. D. Randall, and had by him a daughter, Nancy Augusta, to whose use said Newbold, on the 6th May, 1833, at the request of said Elmira and her father, Jesse Janye, executed a deed for said slave, to Henry Chamberlain, conveying her to him as trustee, &c. for the daughter. This deed was duly recorded in the Mobile County Court on the 15th June, 1833. The said Nancy Augusta died when very young, (the precise time not given,) and on the 13th May, 1837, said Chamberlain, by the consent of said W. D. Randall and his wife, Elmira, executed a deed

convcying said slave, Jinsey, to Wm. H. and James F. Randall, claimants, who were minors and brothers of said Nancy Augusta, born after she was, and who were living with their parents, the defendants in execution. The said Wm. D. Randall held possession of said girl, and of her issue, the boy now levied on, for the claimants, ever since the date of the deed and the birth of said boy, laying no claim to them himself, but claiming to hold them as the property of the appellants. The deed from Chamberlain to the claimants was recorded in the County Court of Mobile on the 24th June, 1837, and a copy is set out in the bill of exceptions.

The proof failed to show whether the claimants were born before or after the decease of Nancy A., the daughter. Neither was there any proof as to when the the debt claimed by the plaintiff in execution was contracted.

Upon this, which is substantially all the proof, the court charged the jury, that, if it was believed by them, the property was subject to the execution : that, in the absence of proof that Nancy Augusta died after the birth of the claimants, the trusts of the deed made to Mr. Chamberlain would not enure to them, but to Wm. D. Randall and wife, as heirs of Nancy, their daughter.

The claimants, by their counsel, asked the court to charge the jury, that, if Randall and wife had had the slave, George, for more than six years before the commencement of the suit of the plaintiff in execution, for the claimants, and holding him as their property, and claiming no right in themselves, or if they assented to the deed made by Chamberlain to them, and held the slave for them under said deed, in such case, the law would be for the claimants. This charge the court refused, and to this refusal, as well as to the charge given, the claimants excepted.

It will be observed that the facts set forth in the record raise no question as to the application of the statute of frauds to the deed made by Chamberlain to the claimants ; for it does not appear that the defendants in the execution were in debt when that conveyance was made. So that, for the purposes of this trial, it may be conceded that upon the death of Nancy Augusta, for whom Chamberlain held the legal title in trust, the beneficial interest in the slave accrued to her father and mother ; yet, as

it was competent for them to yield their claim, and to consent to a transfer of the property to the claimants, we see no reason why we should not uphold the transfer, if the rights of existing creditors are in no wise affected. The deed of Chamberlain having been made by the consent of W. D. Randall and wife, and they having held the slave for more than six years before the claim of the creditor accrued, for the infants under the deed, would most undoubtedly confer the title upon the infants, for it is the same, in legal contemplation, as if the infants had held possession themselves under *bona fide* claim of title.

Let it be conceded that the consent of the parents to Chamberlain's conveyance amounted to a voluntary relinquishment on their part of their beneficial interest in the slave, yet, if there were no creditors at the time, as against whom such conveyance would be constructively fraudulent, and if there was no fraud in fact, which would avoid the conveyance as well against subsequent as existing creditors, and which is not insisted upon in this case, so far as the record before us discloses, the law will uphold the conveyance, and vest the property in the claimants.

The judge in the court below, however, mistook the law as to the title which would accrue to the parents as heirs of their daughter, upon her death without brothers or sisters. In strictness of law, personal chattels do not descend to the heirs.— They go to the personal representatives of the deceased, and the parties beneficially interested take as distributees under the statute of distribution. In this case, the legal title remained in the trustee, and if the parents were the proper distributees of the beneficial interest, it was, as we have shown, competent for them (the claims of existing creditors aside) to consent to a conveyance of the entire property by the trustee to their other children. This they have done; and if there was no fraud in fact in the transaction, such as would invalidate it as against subsequent creditors, the court is bound to regard the grantees, who are the claimants, as the owners of the property. The principles which we have announced, are too well settled to require the citation of authorities to support them.

Let the judgment be reversed, and the cause remanded.