(80 South. 46)

MAY et al. v. CHILES.    (2 Div. 674.)

(Supreme Court of Alabama.   Nov. 21, 1918.)

1. ESTOPPEL ⬚38—DEED WITH COVENANT—TRANSFER OF AFTER-ACQUIRED TITLE.

Under covenant of warranty in deed of one without title, title vests in the grantee on subsequent execution to grantor of deed by holder of title.

2. FRAUDULENT CONVEYANCES ⬚154(1) — FAILURE TO RECORD.

Deed is not fraudulent as to grantor's creditors, merely because of grantee's failure, through ignorance of necessity, to record it.

3. EXECUTION ⬚274 — JUDGMENT CREDITOR AS PURCHASER — NOTICE OF UNRECORDED DEED.

Preponderance of evidence held to show creditor of grantor of unrecorded deed, before instituting action against grantor in which he recovered judgment, under execution on which he purchased the land, had notice of the deed, precluding him from the benefit of Code 1907, § 3383, as a bona fide purchaser.

4. FRAUDULENT CONVEYANCES ⬚295(4)—UNRECORDED DEED — CREDIT ON APPARENT OWNERSHIP—EVIDENCE.

Relative to question of grantee in unrecorded deed being estopped to claim the land against grantor's creditor, evidence held to show creditor did not extend credit on apparent ownership of property.

Appeal from Circuit Court, Greene County; Henry B. Foster, Judge.

Suit by Walter C. Chiles, revived in name of Anna D. Chiles, executrix, against Mary Elizabeth H. May and others. From an adverse decree, defendant named appeals. Reversed and remanded.

Original bill filed by Walter C. Chiles (who during the pendency of this suit died, and the cause was revived in the name of his executrix) against the respondents, M. H. May, Mary E. May, Merchants' & Farmers' Bank of Greene County, Mrs. F. J. Dimick, and Steele's Bluff Mercantile Company. The purpose of the bill was to redeem the lands, as therein described, from mortgages held by respondents Mrs. F. J. Dimick, Merchants' & Farmers' Bank, and Steele's Bluff Mercantile Company, which mortgages were executed by respondents M. H. May and his wife, Mary E. May. Redemption is sought of the lands specifically described in the bill, which are located in sections 9, 10, 15, 16, 21, and 22, township 23, range 3 east, Greene county, Ala. These lands were purchased by the original complainant Walter C. Chiles, at execution sale issued on a judgment against M. H. May; the lands being sold as the property of said M. H. May. Mary E. May is the wife of the judgment debtor, M. H. May, and the sole question of contest in the case arises over the claim of title asserted by the said Mary E. May to a portion of the land purchased under said execution sale by the original complainant. Mary E. May insisted that for a valuable consideration—being the sum of several hundred dollars advanced to her husband, M. H. May, by her—the said M. H. May did on October 12, 1893 (which was long before the recovery of the judgment by the original complainant, the said judgment being recovered in 1911) execute to her a deed to that portion of said property described in the original bill located in sections 15, 16, 21, and 22, township 23, range 3 east, Greene county, Ala. It is further averred that the said complainant had notice before the recovery of the judgment that said conveyance had been made by the said M. H. May to Mary E. May. The deed to Mary E. May contained the usual covenants of warranty as to the title.

The testimony for the complainant tended to show that M. H. May began an account at the complainant's store in the year 1894, and so continued to trade with complainant for a number of years thereafter. The judgment was recovered in September, 1911, for something over $900. The testimony further tended to show that the account had been almost entirely paid up in 1907. Complainant offered proof to show that M. H. May had been in possession of the lands under claim of ownership all these years, and was in possession thereof at the time of the sale under execution; that he assessed the same and paid taxes thereon; that the records disclosed the deeds were made in his name; and that he had no notice of the deed to the respondent Mary E. May at the time of said purchase at the execution sale.

The testimony for the respondents show the execution of the deed by the husband to the said Mary E. May in 1893 to the lands indicated above, which deed was witnessed and duly acknowledged on the day of its execution, and delivered to the said Mary E. May; that she placed the same in her trunk,

---

⬚For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

but did not have it recorded until January, 1912 (after the recovery of the judgment); that her failure to so record the deed was through ignorance of any necessity thereof; that said M. H. May was at the time of the execution of said deed in possession of the property therein described, but did not have the title thereto; that the title was subsequently acquired at different times by him through deeds made in his name; and that the title vested in her by virtue of the covenants of warranty contained in said deed. The testimony of the respondent Mary E. May further tended to show that the said deed to her was based upon a valuable consideration of several hundred dollars previously advanced to her husband, and that such fact was generally known in the community in which the land was situated and in which the complainant resided. Respondents also offered testimony tending to show claim of ownership by the respondent Mary E. May, and further that the said M. H. May for a number of years kept his indebtedness to the original complainant pretty well paid up. Witnesses Ed and Ceph Herndon, who are brothers-in-law of Mary E. May, testified that, a few weeks previous to the bringing of suit by the original complainant against M. H. May, witness Ed Herndon told the said Walter C. Chiles that it would be useless to bring a suit against May, as everything was in his wife's name and belonged to her; that this conversation took place on the street (just outside the door of Chiles' store in Eutaw) during a discussion of May's indebtedness. The said Chiles admitted the said conversation about the time and place as testified to by the said Herndons, but denied the above statement was made to him.

Complainant offered testimony tending to show that the said M. H. May had interposed a claim of homestead exemptions at the time the lands described in the bill were levied upon, and the said M. H. May testified in rebuttal that he did so upon advice of counsel. Mary E. May testified that she knew nothing in regard thereto, and that her husband had all along recognized the property as her own and accounted to her for rent.

Upon submission of the cause for final decree upon the pleadings and proof, it was decreed in the court below that complainant was entitled to the relief sought, and that said M. H. May was the owner of all the land at the time of sale under execution; that said Mary E. May had no interest therein, and that the said deed executed to her in 1893 was, as to said original complainant, null and void. From this decree the said Mary E. May prosecutes this appeal.

R. B. Evins, of Greensboro, for appellant.

Harwood, McKinley, McQueen & Aldridge and Foster, Verner & Rice, all of Tuscaloosa, for appellee.

GARDNER, J. An examination of the statement of the case will disclose that the sole contest in this cause arises over the claim of title asserted by respondent Mary E. May, appellant here, to a portion of the land involved in the suit. It is without dispute that in 1893 the respondent M. H. May executed a deed to his wife, Mary E. May, conveying the property to which she asserts ownership, and that said conveyance contained covenants of warranty as to the title, and that at the time of the execution the grantor did not have the title to the same, but was in possession of the lands, and in subsequent years secured warranty deeds thereto.

[1] Under the covenants of warranty, therefore, in the deed to said Mary E. May the title vested in her upon the due execution of the deeds to her grantor. There is nothing in the record indicating in the least any fraudulent intent in the execution of the deed to the said Mary E. May in 1893, and nothing appears by way of impeachment of the bona fides of this transaction.

Some of the argument of counsel for appellee is devoted to a consideration of the question as to whether or not the instrument of October, 1893, executed to the said Mary E. May by M. H. May, is a will or a deed; but we are of the opinion that it so clearly appears that this instrument is a deed that this question requires no specific treatment. The original complainant was a simple contract creditor, the said M. H. May becoming indebted to him upon an open account which began in 1894.

[2] The deed to said Mary E. May was not recorded until after the judgment against M. H. May was recovered, but the failure to record the same is rested upon ignorance of the necessity therefor. There is no evidence in the least tending to show any fraudulent withholding of the deed from record, and it does not seem to be insisted by counsel for appellee that cases involving this principle (Middlebrooks v. Moore-Handley Co., 78 South. 829;[1] Mathews v. Carroll, 195 Ala. 501, 70 South. 143) have application here.

[3] As this deed was not of record at the time of the recovery of the judgment by the original complainant against M. H. May, and the purchase of the lands involved at execution sale, the said complainant would therefore be protected under section 3383 of the Code of 1907, if without notice of the execution of said deed; and the first question of fact to arise relates to this question of notice. We need not discuss the evidence upon this point (the outline of which appears in the statement of the case). Suffice it to say that, after a very careful consideration thereof, we have reached the conclusion that the preponderance of the evidence sustains the contention of respondents that the said Walter C. Chiles was given such notice prior to the institution of his suit against respondent

[1] 201 Ala. App. 451.

M. H. May as would preclude him from the protection of the above-cited statute.

[4] Counsel for appellee strenuously insist, however, that in view of the proof tending to show that the deed to respondent Mary E. May was not on record (the record disclosing the title to be in the said M. H. May, who was shown to be in possession of the land, and evidence tending to show a claim of ownership thereof), and further that the said Mary E. May knew her husband was trading with the said Walter C. Chiles and that the said May obtained credit from said Chiles on the faith of said ownership, the said Mary E. May is therefore estopped from setting up her title against the said creditor of her husband citing, among other authorities, Goldberg v. Parker, 87 Conn. 99, 87 Atl. 555, 46 L. R. A. (N. S.) 1097, Ann. Cas. 1914C, p. 1059. This argument, however, is, of course, based upon the assumption that the creditor extended the credit in reliance upon the husband's apparent title. Note to Goldberg v. Parker, Ann. Cas. 1914C, 1070.

We cannot read the testimony of the original complainant and be persuaded that in the extension of credit to the said M. H. May he rested reliance upon the apparent ownership of the land here involved. Speaking to this question, the said Chiles testified:

"I never took a mortgage on any land from the defendant M. H. May. I have trusted him on his face. I sold him the goods for which he became indebted to me, and which indebtedness is the basis of the judgment which I recovered against him, on which was issued the execution levied on the lands described in the bill, on his face."

The witness further testified that he had no occasion to investigate or ascertain whether the property belonged to Mr. or Mrs. May. As to whether or not, therefore, the principle of equitable estoppel, insisted upon by counsel for appellee (aside from the question just discussed), would have application under the facts as found in this record, need not be here determined, in view of the conclusion which we have reached that the original complainant did not extend credit to the husband upon his apparent ownership of the property here involved.

We do not therefore find any principle of law, under the findings of fact above indicated, which would, in our opinion, justify an annulment of the title acquired by respondent Mary E. May under her warranty deed.

The conclusion which we have reached is not in harmony with that of the court below, and the decree of the trial court will therefore be reversed, and the cause remanded for further proceedings in accordance with the views here expressed.

Reversed and remanded.

SAYRE, SOMERVILLE, and THOMAS, JJ., concur.